**IN THE CHANCERY COURT OF TENNESSEE**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

---

**THIRSTY ENTERPRISES, LLC**

**Plaintiff,**

**vs.** **No.** CH-26-1034-2
**JURY DEMANDED**

FILED
SHELBY COUNTY
CHANCERY COURT
JUL 29 2026
W. AARON HALL, C & M
TIME: ______ BY: ______

**UNITED STATES LIABILITY INSURANCE COMPANY**

**Defendant.**

---

**COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT AND OTHER RELIEF**

---

COME NOW Plaintiff Thirsty Enterprises, LLC (“**Plaintiff**”), by and through counsel, and for its Complaint for Declaratory Relief, Breach of Contract and Other Relief against Defendant United States Liability Insurance Company (“**Defendant**”), would respectfully show and state as follows:

**PARTIES**

1. Plaintiff is a Tennessee limited liability company with its principal place of business located at 2447 Summer Avenue, Memphis, Tennessee 38112.

2. According to the Insurance Division of the Tennessee Department of Commerce and Insurance, Defendant is foreign insurance company with its principal place of business located at 1190 Devon Park Drive, Wayne, Pennsylvania 19087. Defendant may be served through the Tennessee Insurance Commission Insurance Division at 500 James Robertson Parkway, Nashville, Tennessee 37243, and its NAIC Code is 25895.



Exhibit B

3. At all times pertinent hereto, Defendants were qualified and licensed to underwrite insurance coverage in the state of Tennessee.

**JURISDICTION AND VENUE**

4. Jurisdiction and venue are proper in this Court since the insurance policy giving rise to this cause was procured by Plaintiff in Shelby County, Tennessee and the acts and failures to act giving rise to this cause took place in and about Shelby County, Tennessee.

**FACTUAL BACKGROUND**

5. Plaintiff is the owner of the real property and improvements located at 2477 Summer Avenue, Memphis, Tennessee, and including a convenience/gas store that it operates on said property (the "**Store**").

6. On or about August 5, 2024, Plaintiff purchased and Defendant issued Policy No. CP 1792528B, which included a "Coverage Period" from August 6, 2024 to August 6, 2025, and any endorsements or extensions thereto (the "**Policy**"). Pursuant to Rule 10.03 of the Tennessee Rules of Civil Procedure, Defendant is in possession of the Policy.

7. According to the Policy, Defendant agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." See Policy, Commercial General Liability Coverage From (CG 00 01 12 07), at Section I (1)(a).

8. The Policy also provides that Defendant "will have the right and duty to defend the insured against any 'suit' seeking" damages for such "bodily injury" or "property damage." See Policy, Commercial General Liability Coverage From (CG 00 01 12 07), at Section I (1)(a).

9. On or about February 3, 2026, a cause of action styled "Deloris Thomas, as Administrator of the Estate of Keyshun D. Thomas, Deceased v. Thirsty Enterprises, LLC, et al."

was filed in Shelby County Circuit Court under Docket No. CT-0496-26 (Div. 6) (the "**Litigation**"). A copy of the Complaint is attached as **<u>Exhibit 1</u>** and incorporated herein by reference.

10. According to Count V of the Complaint filed in the Litigation, Plaintiff allegedly breached its duty to "render to aid to those persons on its property," and breached said duty because it "did not render any aid to Keyshun Thomas after he was fatally shot on its premises." <u>See</u> Complaint, at ¶ 30, 31.

11. Count V of the Complaint further alleges that "Thirsty's failure to render aid was a 'cause in fact' to Keyshun Thomas' death. . . ," that "Thirsty's failure to render aid was a 'legal cause' to Keyshun Thomas' death. . . ," and that "[a]s a direct result of Defendant Thirsty's failure to render aid, Plaintiff has suffered injuries. . . ." <u>See</u> Complaint, at ¶ 32-34.

12. Count V of the Complaint alleges that Plaintiff was negligent after the shooting had concluded, including allegations that Plaintiff breached an independent duty to render aid and that such breach independently caused additional injury(ies), prolonged suffering, and death. <u>See</u> Complaint, at Count V.

13. Based on the allegations in the Complaint filed in the Litigation, Plaintiff may become legally obligated to pay the damages being sought from it in said Litigation.

14. Plaintiff timely made a claim against the Policy, and made demand upon Defendant to, among other things, provide Plaintiff with a defense in the Litigation.

15. Pursuant to correspondence dated June 8, 2026 and July 13, 2026 (copies attached as **<u>Collective Exhibit 2</u>** and incorporated herein by reference), Defendant denied that there was coverage under the Policy based on certain exclusions.

16. Defendant has failed and refused to defend Plaintiff in the Litigation, has denied any obligation to indemnify Plaintiff under the Policy, and has refused to reimburse Plaintiff for

the defense costs and expenses Plaintiff has incurred and continues to incur in connection with the Litigation.

17. An actual, present and justiciable controversy exists between Plaintiff and Defendant concerning Defendant's contractual obligations under the Policy, and including but not limited to its present duty to defend Plaintiff against the claims asserted against it in the Litigation.

**Count I-Declaratory Relief**

18. Plaintiff incorporates and reallege the previous allegations as if fully set forth herein.

19. This Court has the authority to issue Declaratory Judgments pursuant to Rule 57 of the Tennessee Rules of Civil Procedure, and the relevant provisions of Tenn. Code Ann. § 29-14-102.

20. Based on the allegations in the Complaint filed Litigation, Plaintiff is or may become legally obligated to pay some, all or portions of the damages being sought in said Litigation.

21. As set forth in Collective Exhibit 2, Defendant contends that certain exclusions bar coverage under the Policy, but Plaintiff disputes Defendant's interpretation and application of said exclusions, and alleges that the Policy affords coverage for one or more of the claims asserted against and damages sought from Plaintiff in the Litigation.

22. Based on the foregoing, Plaintiff is entitled to a declaratory judgment that: **(a)** there is coverage under the Policy for the damages being sought from Plaintiff in the Litigation; **(b)** Defendant presently has a duty to defend Plaintiff in the Litigation; **(c)** Defendant must reimburse all reasonable defense costs and expenses incurred to date; and **(d)** to the extent ripe, Defendant has a duty to indemnify Plaintiff for damages that it may become legally obligated to pay in connection with the Litigation, and including but not limited to any damages that may be assessed against Plaintiff in connection therewith.

**Count II-Breach of Contract**

23. Plaintiff realleges and incorporates the foregoing paragraphs as if set forth in full.

24. The Policy included coverage for some, all or portion(s) of the damages being sought from Plaintiff in the Litigation.

25. Plaintiff made a claim under the Policy in connection with the damages being sought from Plaintiff in the Litigation.

26. Plaintiff has made demand under the Policy for Defendant to defend Plaintiff in the Litigation and to indemnify Plaintiff for any damages that it may become legally obligated to pay in connection with said Litigation.

27. At all times material hereto, Plaintiff has complied with the terms of the Policy.

28. Defendant materially breached the terms of the Policy as a result of, among other things, wrongfully refusing to defend Plaintiff in the Litigation.

29. Plaintiff has been damaged as a result of Defendant's material breach(es) of the Policy in an amount to be proven at trial, but in no event less than the sum of the costs and expenses incurred by Plaintiff in defending the Litigation, plus any damages that Plaintiff may become legally obligated to pay in connection with the Litigation.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Thirsty Enterprises, Inc. respectfully prays:

1. That a copy of this Complaint be served upon Defendant requiring it to answer as required by applicable law;

2. That pursuant to Count I, Plaintiff be awarded a judgment declaring that: **(a)** there is coverage under the Policy for the damages being sought from Plaintiff in the Litigation; **(b)** Defendant presently has a duty to defend Plaintiff in the Litigation; **(c)** Defendant must reimburse all

reasonable defense costs and expenses incurred to date; and **(d)** to the extent ripe, Defendant has a duty to indemnify Plaintiff for damages that it may become legally obligated to pay in connection with the Litigation, and including but not limited to any damages that may be assessed against Plaintiff in connection therewith;

3. That pursuant to Count II, Plaintiff be awarded a judgment in an amount to be proven at trial, but in no event less than the total sum of the costs and expenses incurred by Plaintiff in defending the Litigation, plus any damages that Plaintiff may become legally obligated to pay in connection with the Litigation;

4. That a jury be empaneled for the trial of this matter;

5. That Plaintiff be awarded interest on all such amounts; and

6. That Plaintiff be awarded such further and general relief to which it may be entitled.

Respectfully submitted,

Adam M. Nahmias (Tenn. Bar No. 16227)
Law Offices of Libby & Nahmias
5384 Poplar Ave., Suite 410
Memphis, Tennessee 38119
(901) 343-0777
adam@lnlawmemphis.com
*Attorneys for Plaintiff*

# EXHIBIT 1

ELECTRONICALLY FILED
2026 Feb 03 11:53 AM
CLERK OF COURT - CIRCUIT

**IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE**
**FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS**

**DELORIS THOMAS, AS ADMINISTRATOR**
**OF THE ESTATE OF KEYSHUN D. THOMAS, DECEASED**

**Plaintiff,**

**v.**

**NO.** CT-0496-26
**Division** 6

**THIRSTY ENTERPRISES, LLC;**
**d/b/a THIRSTY SHELL**
**GPM PETROLEUM, LLC;**
**SHELL USA, INC.; JOHN/JANE DOES 1-10**

**and**

**ANDRE D. SCOTT**

**Defendants.**

**COMPLAINT FOR PERSONAL INJURIES**
**JURY TRIAL DEMANDED**

**<u>COMPLAINT</u>**

COMES NOW, Plaintiff Deloris Thomas, as Administrator of the Estate of Keyshun D. Thomas, on behalf of the beneficiaries of the Estate, by and through undersigned counsel, COOK & COSSIO, and for her cause of action against Defendants Thirsty Enterprises, LLC; GPM Petroleum, LLC; Shell USA, Inc; John/Jane Does 1-10 and Andre D. Scott, and respectfully states and files Plaintiffs' Complaint as follows:

## I. JURISDICTION AND VENUE

1. This claim is brought pursuant to this Court's jurisdiction over personal injury claims over claims predicated on negligence, recklessness and wrongful death granted by Tenn. Code. Ann. §16-10-101. All wrongs complained of herein occurred within this jurisdiction and within one year preceding the filing of this action.

2. Plaintiff has suffered losses and damages in excess of the amount required for Federal Court diversity jurisdiction pursuant to 28 U.S.C. § 1332.

3. Venue is proper under Tenn. Code Ann. § 20-4-101, et seq. in that incident herein complained of occurred in Shelby County, Tennessee.

## II. PARTIES TO THE CLAIM

4. At all times relevant to this cause of action, Plaintiff Deloris Thomas, (hereinafter "Plaintiff") was an adult resident citizen of Shelby County, Tennessee, and is the duly appointed Administrator of the Estate of Keyshun D. Thomas, deceased. *See* Exhibit "A" Order of Administration.

5. At all times relevant to this cause of action, Defendant Thirsty Enterprises, LLC (hereinafter "Thirsty") is a domestic for-profit company, registered to do business in the state of Tennessee. Defendant Thirsty may be served with process upon any partner, officer, managing agent, or any other agent authorized to receive service on its behalf. Its service address is as follows:

Thirsty Enterprises, LLC
c/o Vikramjit Singh
2477 Summer Avenue
Memphis, TN 38112

6. Defendant GPM Petroleum, LLC (hereinafter "GPM") is a for-profit domestic company, registered to do business in the state of Tennessee. Defendant GPM may be served with process upon any partner, officer, managing agent, or any other agent authorized to receive service on its behalf. Its service address is as follows:

GPM Petroleum, LLC
c/o Corporation Service Company
2908 Poston Avenue
Nashville, TN 37203

7. Upon information and belief, Defendant Shell USA, Inc. (hereinafter "Shell") is a for-profit company registered to do business in the state of Tennessee, and is the authorizing principal and business entity maintaining control, title and ownership of taxable signage, equipment, apparatus and devices on the premises, and the lessor of specific signage, equipment, apparatus and devices granting to Defendant Thirsty, and Defendant GPM, an exclusive right of representation, agency, licensing, authority and control to third parties by words, acts or conduct in the operation, management, distribution, supply, control, regulation, sale, and property, and dispersal of goods, product or service using expertise, intellectual property, branding, trademarks, logos and identifying marks under a common trade name for the regulation and dispersal of said goods and services under specific written guidelines and contractual obligations unique to quality control for their business model/system. Defendant Shell is directly liable for its own corporate negligent actions as well as for the actions, omissions or commissions of its operators, distributors, lessee, sub-lessee, employees, agents and contractors by virtue of the doctrines of direct negligence, agency, apparent agency, implied agency, ostensible agency, implied authority, express authority, master-servant relations, loaned servant relations, joint-venture, joint and

several liability, *respondent superior*, and/or vicarious liability. Defendant Shell is a for-profit company and is registered to do business in the state of Tennessee. Defendant Shell may be served with process upon any partner, officer, managing agent, or any other agent authorized to receive service on its behalf. Its service address is as follows:

Shell USA, Inc.
c/o C T Corporation System
300 Montvue Road
Knoxville, TN 37919

8. At all times relevant to this cause of action, Defendant Andre D. Scott (hereinafter "Defendant Scott"), was a resident of Shelby County, Tennessee. Defendant Scott may be served with process at the following address:

Andre D. Scott, Inmate # 25107500
c/o Shelby County Sheriff's Office
201 Poplar Avenue
Memphis, TN 38103

9. Upon information and belief, Defendants Johns/Janes Doe 1-10 are other corporate entities, business entities, or persons, including owners, staff, employees, and/or agents of Defendant(s) Thirsty, GPM, and Shell whose actions, omissions, commissions are imputed to Defendants by virtue of the doctrines of direct negligence, agency, apparent agency, implied agency, ostensible agency, implied authority, express authority, employer/employee relations, master-servant relations, loaned servant relations, joint-venture, joint and several liability, respondent superior, and/or vicarious liability. Plaintiff will amend his complaint to substitute the correct name(s) of the entities and/or persons when they are discovered.

## III. STATEMENT OF THE CASE

Plaintiff hereby incorporates by reference, all previous paragraphs as if fully set forth herein, and further asserts for her cause of action the following particulars:

10. On or about May 18, 2025, at approximately 12:00 a.m., Keyshun D. Thomas (hereinafter "Keyshun") was a business invitee of Defendants' convenience store located at: 2711 Range Line Road, Memphis, Tennessee.

11. Upon information and belief, Keyshun entered the convenience store to purchase a drink and snack items.

12. Upon information and belief, Defendant Scott, along with two unknown male accomplices, entered the convenience store, brandished firearms and attempted to rob two (2) patrons inside the convenience store of their belongings.

13. Upon information and belief, Keyshun, seeing the armed robbery unfold, attempted to flee the convenience store through the only exit, the front door.

14. Upon information and belief, Defendant Scott provided defensive cover for the unknown accomplices as they robbed one (1) patron, then randomly opened fire on the two (2) patrons they were attempting to rob.

15. Upon information and belief, neither of the two (2) patrons were struck by the multiple rounds fired in their general direction.

16. Upon information and belief, as Keyshun was making his way to the exit, he was struck in the abdomen by a bullet that was fired in the general direction of the robbery victims.

17. Defendant Scott and his two accomplices successfully robbed one patron and fled the convenience store.

18. Upon information and belief, Keyshun was left alone, bleeding on the floor near the coolers in the convenience store. Prior to the arrival of emergency personnel, neither Defendant Thirsty, nor any employee of Defendant Thirsty rendered, or attempted to render any aid to Keyshun.

19. Upon the arrival of emergency medical personnel at the convenience store, Keyshun was rendered medical treatment and transported to Regional One Medical Center. Despite emergency medical personnel's life-saving efforts, Keyshun succumbed to his injuries and was pronounced dead at the hospital.

20. Upon the arrival of Memphis Police Department, officers reviewed convenience store security video and determined one (1) of the assailants left fingerprints on merchandise at the scene. Through latent fingerprint analysis and photos obtained from the Metro Gang Unit, Defendant Scott was identified as one of the perpetrators of the armed robbery.

21. Defendant Scott is currently in custody of the Shelby County Sheriff's Office. He has been charged with First Degree Murder in the Perpetration of Armed Robbery.

## IV. NEGLIGENCE OF DEFENDANT THIRSTY ENTERPRISES, LLC.

Plaintiff hereby incorporates by reference, all previous paragraphs as if fully set forth herein, and further asserts for her cause of action the following particulars:

22. Defendant Thirsty, at all times prior to and during the incident forming the basis of this lawsuit, was the occupant, tenant, owner and operator of the business described herein, holding itself out as a convenience store and gas station business entity inviting members of the public to its premises.

23. Keyshun Thomas was a patron and business invitee of that convenience store location whose patronage benefited Defendant Thirsty.

24. Defendant Thirsty breached the duty owed to Keyshun Thomas by failing to use ordinary care and exercise reasonable diligence to maintain and secure the premises in a reasonably safe condition on the date of the incident forming the basis of this lawsuit.

25. Defendant Thirsty breached the duty owed to Keyshun Thomas by failing to exercise reasonable diligence and ordinary care to discover and prevent acts of violence as suffered by Keyshun Thomas on the date of the incident forming the basis of this lawsuit.

26. Defendant Thirsty breached the duty owed to Keyshun Thomas by failing to exercise reasonable diligence and ordinary care to render assistance to Keyshun Thomas in order to prevent injury on the date of the incident forming the basis of this lawsuit.

27. Defendant Thirsty knew, or should have known by the exercise of reasonable care and diligence from a reasonably prudent person perspective, that the probability of a harmful event was foreseeable and likely to happen if reasonable steps were not implemented to prevent the occurrence of a similar incident as the one forming the basis of this lawsuit.

28. The negligent, careless, and reckless acts and omissions, and conscious indifference as to the consequences by Defendant Thirsty consisted of one or more of the following:

a. Defendant Thirsty failed to maintain and provide adequate safety and security and employee staffing and training to prevent injury to Keyshun Thomas;

b. Defendant Thirsty failed to maintain and provide adequate safety and security policies, procedures, and programs to prevent injury to Keyshun Thomas;

c. Defendant Thirsty failed to exercise proper oversite, direction, supervision, and control of its safety and security policies, procedures, and programs to assure Keyshun Thomas was adequately and properly protected from injury;

d. Defendant Thirsty failed to properly deploy adequate safety and security personnel on its premises to prevent injury to Keyshun Thomas;

e. Defendant Thirsty failed to exercise proper oversite, direction, supervision, and control over safety and security policies, procedures, and personnel to prevent injury to Keyshun Thomas;

f. Defendant Thirsty failed to warn Keyshun Thomas of the unsafe conditions on the premises it owned and/or controlled;

g. Defendant Thirsty knew, or should have known, that events similar to the one that caused Keyshun Thomas's injuries had previously and recently occurred on the premises it owned and/or controlled or in close proximity;

h. Defendant Thirsty knew, or should have known, under the totality of circumstances that the nature, condition, location, and proximity of its premises to prior similar incidents made Keyshun Thomas's injuries foreseeable; and

i. Defendant Thirsty knew, or should have known, that in the thirty-six (36) months preceding the incident forming the basis of this lawsuit, the City of Memphis, Tennessee Police Department received, reported, and/or responded

to Six Hundred-Four (604) known requests for police service and crimes on the premises it owned and/or controlled, including, but not limited to:

i. Twenty (20) Suspicious Person Calls;

ii. Two (2) Armed Robbery Calls;

iii. One Hundred Seventy-Four (174) Disturbance Calls;

iv. Nine (9) Shots Fired Calls;

v. Fifty-Five (55) Armed Person Calls;

vi. Sixteen (16) Fight Calls;

vii. Three (3) Drug Sales Calls;

viii. Four (4) Carjacking Calls;

ix. Six (6) Shooting With Person Struck Calls;

x. Nine (9) Solicitation Calls;

xi. One (1) Kidnapping Call;

xii. Twenty-Six (26) Aggravated Assault/Assault Calls;

xiii. One (1) Homicide Investigation Call;

xiv. Four (4) Intimidation Calls;

xv. Six (6) Gang Investigation Calls; and,

xvi. Six (6) Weapon Violation Investigation Calls

j. Defendant Thirsty knew, or should have known, in the thirty-six (36) month period preceding the incident forming the basis of this lawsuit, the City of Memphis Police Department public access Data Hub divulges Four Hundred Thirty-Four (434) criminal investigations were conducted in the contiguous areas adjoining the premises it owned and/or controlled, including, but not limited to:

i. Fifteen (15) Armed Robberies and Robbery Investigations;

ii. Seventy-Four (74) Aggravated Assaults and Assault Investigations;

iii. Twenty-Three (23) Intimidation Investigations;

iv. Eighteen (18) Carjacking Investigations;

v. Five (5) Homicide Investigations;

vi. Seventeen (17) Weapon Violation Investigations; and,

vii. Four (4) Arson Investigations.

## V. NEGLIGENCE OF DEFENDANT THIRSTY ENTERPRISES, LLC – FAILURE TO RENDER AID

Plaintiff hereby incorporates by reference, all previous paragraphs as if fully set forth herein, and further asserts for her cause of action the following particulars as to all Defendants:

29. Defendant Thirsty, at all times prior to and during the incident forming the basis of this lawsuit, was the proprietor, owner, and/or operator of the business and in control of the real property and business located at 2711 Range Line Road, Memphis, Tennessee, holding itself out as a retail convenience store inviting members of the public to its business premises.

30. As a possessor of property held open to the public, Defendant Thirsty owed a duty of ordinary and reasonable care to render aid to those persons on its property by virtue of its invitation to the public. *See* TENNESSEE PATTERN JURY INSTRUCTIONS, T.P.I Civil 4.31.

31. Defendant Thirsty breached that duty by failing to use ordinary and reasonable care. Having a duty to render aid, Defendant Thirsty did not render any aid to Keyshun Thomas after he was fatally shot on its premises.

32. Defendant Thirsty's failure to render aid was a 'cause in fact' to Keyshun Thomas' death because it directly contributed to Keyshun Thomas' death.

33. Defendant Thirsty's failure to render aid was a 'legal cause' to Keyshun Thomas' death because it was a substantial factor in bringing about the harm being complained of and Defendant Thirsty could have reasonably foreseen or anticipated that Keyshun Thomas might die if it did not render aid to him after he was shot.

34. As a direct result of Defendant Thirsty's failure to render aid, Plaintiff has suffered injuries, including the needless, prolonged suffering and death of Keyshun Thomas.

## VI. NEGLEGENCE OF GPM PETROLEUM, LLC.

Plaintiff hereby incorporates by reference, all previous paragraphs as if fully set forth

herein, and further asserts for her cause of action the following particulars as to all Defendants:

35. Defendant GPM, at all times prior to and during the incident forming the basis of this lawsuit, was the proprietor, owner, operator, supplier, distributor, lessee, sub-lessee, contractor or agent of the business described herein located at: 2711 Range Line Road, Memphis, Tennessee, holding itself out as a retail convenience store inviting members of the public to its business premises.

36. Keyshun Thomas was a patron and business invitee of Defendant GPM whose patronage benefited Defendant GPM.

37. Defendant GPM breached the duty owed to Keyshun Thomas by failing to use ordinary care and exercise reasonable diligence to maintain and secure the premises in a reasonably safe condition on the date of the incident forming the basis of this lawsuit.

38. Defendant GPM breached the duty owed to Keyshun Thomas by failing to exercise reasonable diligence and ordinary care to discover and prevent acts of violence as suffered by Keyshun Thomas on the date of the incident forming the basis of this lawsuit.

39. Defendant GPM breached the duty owed to Keyshun Thomas by failing to exercise reasonable diligence and ordinary care to render aid and assistance to Keyshun Thomas in order to prevent injury on the date of the incident forming the basis of this lawsuit.

40. Defendant GPM knew, or should have known by the exercise of reasonable care and diligence from a reasonably prudent person perspective, that the probability of a harmful event was foreseeable and likely to happen if reasonable steps were not implemented to prevent the occurrence of a similar incident as the one forming the basis of this lawsuit.

41. The negligent, careless, and reckless acts and omissions, and conscious indifference as to the consequences by Defendant GPM consisted of one or more of the following:

a. Defendant GPM failed to maintain and provide adequate safety and security and employee staffing and training to prevent injury to Keyshun Thomas;

b. Defendant GPM failed to maintain and provide adequate safety and security policies, procedures, and programs to prevent injury to Keyshun Thomas;

c. Defendant GPM failed to exercise proper oversite, direction, supervision, and control of its safety and security policies, procedures, and programs to assure Keyshun Thomas was adequately and properly protected from injury;

d. Defendant GPM failed to properly deploy adequate safety and security personnel on its premises to prevent injury to Keyshun Thomas;

e. Defendant GPM failed to exercise proper oversite, direction, supervision, and control over safety and security policies, procedures, and personnel to prevent injury to Keyshun Thomas;

f. Defendant GPM failed to warn Keyshun Thomas of the unsafe conditions on the premises it owned and/or controlled;

g. Defendant GPM knew, or should have known, that events similar to the one that caused Keyshun Thomas's injuries had previously and recently occurred on the premises it owned and/or controlled or in close proximity;

h. Defendant GPM knew, or should have known, under the totality of circumstances that the nature, condition, location, and proximity of its premises to prior similar incidents made Keyshun Thomas's injuries foreseeable; and

i. Defendant GPM knew, or should have known, that in the thirty-six (36) months preceding the incident forming the basis of this lawsuit, the City of Memphis, Tennessee Police Department received, reported, and/or responded to Six Hundred-Four (604) known requests for police service and crimes on the premises it owned and/or controlled, including, but not limited to:

i. Twenty (20) Suspicious Person Calls;

ii. Two (2) Armed Robbery Calls;

iii. One Hundred Seventy-Four (174) Disturbance Calls;

iv. Nine (9) Shots Fired Calls;

v. Fifty-Five (55) Armed Person Calls;

vi. Sixteen (16) Fight Calls;

vii. Three (3) Drug Sales Calls;

viii. Four (4) Carjacking Calls;

ix. Six (6) Shooting With Person Struck Calls;

x. Nine (9) Solicitation Calls;

xi. One (1) Kidnapping Call;

xii. Twenty-Six (26) Aggravated Assault/Assault Calls;

xiii. One (1) Homicide Investigation Call;

xiv. Four (4) Intimidation Calls;

xv. Six (6) Gang Investigation Calls; and,

xvi. Six (6) Weapon Violation Investigation Calls.

j. Defendant GPM knew, or should have known, in the thirty-six (36) month period preceding the incident forming the basis of this lawsuit, the City of Memphis Police Department public access Data Hub divulges Four Hundred Thirty-Four (434) criminal investigations were conducted in the contiguous areas adjoining the premises it owned and/or controlled, including, but not limited to:

i. Fifteen (15) Armed Robberies and Robbery Investigations;

ii. Seventy-Four (74) Aggravated Assaults and Assault Investigations;

iii. Twenty-Three (23) Intimidation Investigations;

iv. Eighteen (18) Carjacking Investigations;

v. Five (5) Homicide Investigations;

vi. Seventeen Weapon Violation Investigations;

vii. Four Arson Investigations;

42. Defendant GPM knew, or should have known, in the thirty-six (36) month period preceding the incident forming the basis of this lawsuit, that the criminal activity both on the premises it owned, and on the premises of other contiguous property within close proximity, that a similar incident such as the one involving Keyshun Thomas would occur if adequate and appropriate safety, security, and protection programs, policies, and procedures were not implemented and maintained.

43. Defendant GPM knew, or should have known, in the thirty-six (36) month period preceding the incident forming the basis of this lawsuit, that the criminal activity on the premises it owned, and on the contiguous other commercial business locations within close proximity, that a similar incident such as the one involving Keyshun Thomas would occur if adequate and appropriate safety, security, and protection programs, policies, and procedures were not implemented and maintained.

44. Defendant GPM knew, or should have known, in the thirty-six (36) month period preceding the incident forming the basis of this lawsuit, that the criminal activity on the premises it owned, and on the contiguous other commercial business locations within close proximity, that a similar incident such as the one involving Keyshun Thomas would occur if adequate and appropriate safety, security, and protection programs, policies, and procedures were not implemented and maintained.

45. Each and every, all and singular, of the foregoing acts and omissions, on the part

of Defendant GPM, taken separately and/or collectively, constitute a direct and proximate cause of the injuries and damages suffered by Keyshun Thomas, as set forth herein.

46. The negligence of unknown employees and staff of Defendant GPM for failing to use reasonable care to prevent the injury to Keyshun Thomas, taken separately and/or collectively, constitute a direct and proximate cause of the damages suffered by Plaintiff and is imputed to Defendant GPM as they were acting within the scope of their employment. To the extent necessary, Plaintiff hereby invokes the doctrine of *respondeat superior*.

## VII. NEGLIGENCE OF DEFENDANT SHELL USA, INC.

Plaintiff hereby incorporates by reference, all previous paragraphs as if fully set forth herein, and further asserts for her cause of action the following particulars as to all Defendants:

47. Keyshun Thomas was a patron and business invitee of Defendant Shell with the subjective, good faith belief that his patronage benefited Defendant Shell.

48. Defendant Shell breached the duty owed to Keyshun Thomas by failing to exercise reasonable diligence and use ordinary care to maintain and secure the convenience store premises in a reasonably safe condition on the date of the incident forming the basis of this lawsuit.

49. Defendant Shell breached the duty owed to Keyshun Thomas by failing to exercise reasonable diligence and use ordinary care to discover and prevent acts of violence as suffered by Keyshun Thomas on the date of the incident forming the basis of this lawsuit.

50. Defendant Shell breached the duty owed to Keyshun Thomas by failing to exercise reasonable diligence and ordinary care to render aid and assistance to Keyshun Thomas in order to prevent injury on the date of the incident forming the basis of this lawsuit.

51. Defendant Shell knew, or should have known by the exercise of reasonable care and diligence from a reasonably prudent person's perspective, that the probability of a harmful event was foreseeable and likely to happen if reasonable steps were not implemented to prevent the occurrence of a similar incident as the one forming the basis of this lawsuit.

52. Under the special facts and circumstances surrounding the murder of Keyshun Thomas, Defendant Shell breached their duty of care to protect Keyshun Thomas by negligent, careless, and reckless acts and omissions, and conscious indifference as to the consequences consisted of one or more of the following:

a. Defendant Shell failed to require its authorized agents Defendant Thirsty Enterprises, LLC and Defendant GPM Petroleum, LLC exercise reasonable diligence and ordinary care to discover, correct, prevent or deter acts of violence on the premises;

b. Defendant Shell failed to require its authorized agents Defendant Thirsty Enterprises, LLC and Defendant GPM Petroleum, LLC to remediate the dangerous conditions on the premises and provide adequate safety and security and employee staffing, training, background and employment verification checks to prevent injury to Keyshun Thomas;

c. Defendant Shell failed to require its authorized agents Defendant Thirsty Enterprises, LLC and Defendant GPM Petroleum, LLC to maintain and provide adequate safety and security and employee staffing and training to prevent injury to Keyshun Thomas;

d. Defendant Shell failed to require its authorized agents Defendant Thirsty Enterprises, LLC and Defendant GPM Petroleum, LLC to maintain and provide adequate safety and security policies, procedures, and programs to prevent injury to Keyshun Thomas;

e. Defendant Shell failed to require its authorized agents Defendant Thirsty Enterprises, LLC and Defendant GPM Petroleum, LLC to exercise proper oversite, direction, supervision, and control of its safety and security policies, procedures, and programs to assure Keyshun Thomas was adequately and properly protected from injury;

f. Defendant Shell failed to require its authorized agents Defendant Thirsty Enterprises, LLC and Defendant GPM Petroleum, LLC to properly deploy adequate safety and security personnel on its premises to prevent injury to Keyshun Thomas;

g. Defendant Shell failed to exercise proper oversite, direction, supervision, and control over safety and security policies, procedures, and personnel of its authorized agents Defendant Thirsty Enterprises, LLC and Defendant GPM Petroleum, LLC, to prevent injury to Keyshun Thomas;

h. Defendant Shell failed to warn Keyshun Thoams of the unsafe conditions on the premises of its authorized agents Defendant Thirsty Enterprises, LLC and Defendant GPM Petroleum, LLC;

i. Defendant Shell failed to adequately supervise, control or direct the activities of its agents Defendant Thirsty Enterprises, LLC and Defendant GPM Petroleum, LLC by virtue of requirements of the doctrines of direct negligence, agency, apparent agency, implied agency, ostensible agency, implied authority and/or express authority;

j. Defendant Shell failed to adequately supervise, control or direct the activities of its agents, operators, distributors, lessee, sub-lessee, employees and contractors Defendant Thirsty Enterprises, LLC and Defendant GPM Petroleum, LLC by virtue of requirements of the doctrines of direct negligence, agency, apparent agency, implied agency, ostensible agency, implied authority and/or express authority;

k. Defendant Shell failed to ensure that its agents, Defendant Thirsty Enterprises, LLC and GPM Petroleum, LLC by virtue of requirements of the doctrines of direct negligence, agency, apparent agency, implied agency, ostensible agency, implied authority and/or express authority acted to discover, correct, prevent or deter acts of violence on the premises;

l. Defendant Shell failed to ensure that its agents, operators, distributors, lessee, sub-lessee, employees and contractors Defendant Thirsty Enterprises, LLC and Defendant GPM Petroleum, LLC by virtue of requirements of the doctrines of direct negligence, agency, apparent agency, implied agency, ostensible agency,

implied authority and/or express authority acted to discover, correct, prevent or deter acts of violence on the premises;

m. Defendant Shell knew, or should have known, that events similar to the one that caused Keyshun Thomas's injuries had previously and recently occurred on the premises Defendant Thirsty Enterprises, LLC and Defendant GPM Petroleum, LLC owned and/or controlled or in close proximity;

n. Defendant Shell knew, or should have known, under the totality of circumstances that the nature, condition, location, and proximity of its premises to prior similar incidents made Keyshun Thomas's injuries foreseeable; and

o. Defendant Shell knew, or should have known, that in the thirty-six (36) months preceding the incident forming the basis of this lawsuit, the City of Memphis, Tennessee Police Department received, reported, and/or responded to Six Hundred-Four (604) known requests for police service and crimes on the premises it owned and/or controlled, including, but not limited to:

   i. Twenty (20) Suspicious Person Calls;

   ii. Two (2) Armed Robbery Calls;

   iii. One Hundred Seventy-Four (174) Disturbance Calls;

   iv. Nine (9) Shots Fired Calls;

   v. Fifty-Five (55) Armed Person Calls;

vi. Sixteen (16) Fight Calls;

vii. Three (3) Drug Sales Calls;

viii. Four (4) Carjacking Calls;

ix. Six (6) Shooting With Person Struck Calls;

x. Nine (9) Solicitation Calls;

xi. One (1) Kidnapping Call;

xii. Twenty-Six (26) Aggravated Assault/Assault Calls;

xiii. One (1) Homicide Investigation Call;

xiv. Six (6) Gang Investigation Calls; and,

xv. Six (6) Weapon Violation Investigation Calls.

p. Defendant Shell knew, or should have known, in the thirty-six (36) month period preceding the incident forming the basis of this lawsuit, the City of Memphis Police Department public access Data Hub divulges Four Hundred Thirty-Four (434) criminal investigations were conducted in the contiguous areas adjoining the premises it owned and/or controlled, including, but not limited to:

i. Fifteen (15) Armed Robberies and Robbery Investigations;

ii. Seventy-Four (74) Aggravated Assaults and Assault Investigations;

iii. Twenty-Three (23) Intimidation Investigations;

iv. Eighteen (18) Carjacking Investigations;

v. Five (5) Homicide Investigations;

vi. Seventeen Weapon Violation Investigations;

vii. Four Arson Investigations.

53. Defendant Shell knew, or should have known, in the thirty-six (36) month period preceding the incident forming the basis of this lawsuit, that the criminal activity both on the premises it owned, and on the premises of other contiguous property within close proximity, that a similar incident such as the one involving Keyshun Thomas would occur if adequate and appropriate safety, security, and protection programs, policies, and procedures were not implemented and maintained.

54. Defendant Shell, at all times prior to and during the incident forming the basis of this lawsuit, knew Defendant Thirsty Enterprises, LLC and GPM Petroleum, LLC owned, leased and/or operated and controlled a Shell branded convenience store and gas station business entity inviting members of the public to its premises.

55. Defendant Shell failed by omission to exercise proper oversite, direction, and control and failed to implement and maintain an adequate incident/occurrence reporting system and/or policy and procedure which would have identified the inherent risk to business invitees and

guests that a harmful event was foreseeable and likely to happen if reasonable steps were not implemented to prevent the occurrence of a similar incident as the one forming the basis of this lawsuit.

56. Defendant Shell at all times prior to, and during the incident forming the basis of this lawsuit was the authorizing principal and business entity maintaining control, title and ownership of signage, equipment, apparatus and devices on the premises, and the lessor of specific signage, equipment, apparatus and devices granting to Defendant Thirsty Enterprises, LLC and GPM Petroleum, LLC an exclusive right of representation, agency, authority and control to third parties by words, acts or conduct in the operation, management, distribution, supply, control, regulation, sale, purchase, and dispersal of a product or service using expertise, intellectual property, branding, trademarks, logos and identifying marks under a common trade name for the regulation and dispersal of said goods and services under specific written guidelines and contractual obligations unique to quality control for their business model/system.

57. Each and every, all and singular, of the foregoing acts and omissions, on the part of Defendant Shell, taken separately and/or collectively, constitute a direct and proximate cause of the injuries and damages suffered by Keyshun Thomas, as set forth herein.

58. The negligence of unknown employees and staff of Defendant Shell for failing to use reasonable care to prevent the injury to Keyshun Thomas, taken separately and/or collectively, constitute a direct and proximate cause of the damages suffered by Plaintiff and is imputed to Defendant Shell as they were acting within the scope of their employment. To the extent necessary, Plaintiff hereby invokes the doctrine of *respondeat superior*.

## VIII. NEGLIGENCE OF DEFENDANT ANDRE D. SCOTT

Plaintiff hereby incorporates by reference, all previous paragraphs as if fully set forth herein, and further asserts for her cause of action the following particulars as to all Defendants:

59. At the time of the incident forming the basis of this lawsuit, Defendant Scott, upon information and belief, was a business invitee of Defendants' convenience store located at: 2711 Range Line Road, Memphis, Tennessee.

60. Upon information and belief, Defendant Scott, along with two male accomplices approached convenience store patrons Donterrio Jackson and Carl Hall inside the convenience store with the intent to commit and armed robbery.

61. Upon information and belief, as Keyshun Thomas was attempting to flee the immediate area of the armed robbery, he was struck by a bullet, ultimately leading to his death.

62. Defendant Scott knew or should have known by the exercise of reasonable care and diligence from a reasonably prudent persons perspective, a reasonably foreseeable and appreciable risk of harm existed and probability of a harmful event with serious injury was foreseeable and likely to occur by intentionally engaging in, and being complicit with accomplices discharging a firearm during the commission of an armed robbery of convenience store patrons.

63. The negligence of Defendant Scott for failing to use reasonable care and abstain from committing intentional acts of violence on the date of the incident forming the basis of this lawsuit taken separately and/or collectively constitute a direct and proximate cause of the damages suffered by Keyshun Thomas.

64. Defendant Scott knew or should have known by his failure to exercise reasonable care and diligence from a reasonably prudent person perspective, a foreseeable risk of harm was

likely to happen if he intentionally engaged in, or was complicit in use of a firearm to commit an armed robbery.

65. Each and every, all and singular of the foregoing negligent acts and omissions of Defendant Scott taken separately and/or collectively constitute a direct and proximate cause of the injuries and damages suffered by Plaintiff as set forth herein.

## IX. JOINT AND SEVERAL LIABILITY

Plaintiff hereby incorporates by reference, all previous paragraphs as if fully set forth herein, and further asserts for her cause of action the following particulars:

66. Defendant Thirsty, through its general negligence in failing to keep the convenience store premises safe, created a foreseeable risk that intentional harm would be visited upon the convenience store's customers.

67. Defendant Thirsty, by negligently failing to employ and enforce necessary safety measures at the convenience store, ignored a risk that intentional tortious acts would be inflicted upon the convenience store's customers.

68. Defendant Thirsty knew, or should have known, given the convenience store's history of violent criminal incidents, that the risk to its customers was foreseeable.

69. Defendant Thirsty knew, or should have known, that the harm arising from Defendant Scott's intentional acts was a foreseeable risk created by its negligence, and Defendant Thirsty must be held jointly and severally liable for the Plaintiff's damages pursuant to the holding in *Limbaugh v. Coffee Medical Center* (citation omitted).

70. Defendant Thirsty is joint and severally liability for Defendant Scott's conduct by failing to prevent foreseeable intentional acts.

## X. DAMAGES

Plaintiff hereby incorporates by reference, all previous paragraphs as if fully set forth herein, and further asserts for her cause of action the following statutory damages in the following particulars:

71. As a direct and proximate result of the occurrence made the basis of this lawsuit, Plaintiff has sustained damages and are entitled to any and all damages allowed by Tenn. Code Ann. §20-5-113, the Tennessee Wrongful Death Statute, including but not limited to the following damages:

a. Keyshun D. Thomas' reasonable and necessary medical care and expenses incurred in the past in Shelby County, Tennessee;

b. Keyshun D. Thomas's physical pain and suffering in the past;

c. Keyshun D. Thomas's mental suffering;

d. Keyshun D. Thomas's loss of enjoyment of life;

e. Keyshun D. Thomas's full pecuniary value of life;

f. Pre- and post-judgment interest;

g. Statutory and discretionary costs of this cause of action;

h. All other damages and general other relief allowed under the laws of the State of Tennessee to which the Plaintiff may be entitled.

72. Wrongful death in Tennessee is a statutorily-created cause of action that both preserves any action belonging to the decedent and creates a separate action that belongs to the decedent's next-of-kin to compensate them for incidental damages suffered as a result of the

decedent's death. *Parker v. Epstein Enters., LLC*, 2020 Tenn. App. LEXIS 235, *65 - *66 (Tenn. Ct. App. 2020).

73. Wrongful death damages permit recovery for injuries sustained by the deceased from 1) the time of injury to the time of death; and, 2) the pecuniary value of the decedent's life. Plaintiff hereby invokes all damages allowed under the laws of the State of Tennessee to which the Plaintiff may be entitled.

74. By reason of the aforementioned, Plaintiff incurred losses, expenses, and damages before the decedent's death (the first category of wrongful death damages) as a direct result of the conduct of Defendants in an amount $2,000,000.00, to be proven at trial.

75. By reason of the aforementioned, Plaintiff incurred losses, expenses, and damages because of decedent's death (the second category of wrongful death damages) as a direct result of the conduct of Defendants in an amount of $2,000,000.00, to be proven at trial.

## XI. EXEMPLARY DAMAGES

Plaintiff hereby incorporates by reference, all previous paragraphs as if fully set forth herein, and further asserts for her cause of action the following statutory damages in the following particulars:

76. When viewed from the standpoint of Defendants at the time of the acts and omissions, their conduct involved an intentional disregard and/or entire want of care as to raise a presumption of conscious indifference to the consequences of the known risk and danger to visitors, guests, and patrons considering the occurrence of recent similar acts of violence as identified herein and as suffered by Keyshun Thomas.

77. Defendants had actual subjective awareness of the risks involved in intentionally disregarding and/or an entire want of care as to raise a presumption of conscious indifference to the consequences of the known danger to visitors, guests, and patrons of its business, by intentionally, recklessly, and knowingly omitting incident reporting and disregarding prior acts of violence which placed Keyshun Thomas's health, safety, and/or welfare in jeopardy.

78. Defendants had actual, subjective awareness of the risk involved in the aforementioned acts and omissions and consciously chose to disregard the consequences by failing to assess the risk of a foreseeable crime, maintain adequate safety and security and crime prevention measures, and failing to protect the rights, safety, and/or welfare of Keyshun Thomas and/or entire want of care as to raise a presumption of conscious indifference to the consequences.

79. Defendants had actual, subjective awareness of the risk involved in the aforementioned acts and omissions and consciously chose to disregard the consequences by failing to assess the risk of a foreseeable crime, maintain adequate safety and security and crime prevention measures, and failing to protect the rights, safety, and/or welfare of Keyshun Thomas and/or entire want of care as to raise a presumption of conscious indifference to the consequences.

80. As a result of Defendants' willful, wanton, grossly negligent, and consciously indifferent conduct and disregard of its social obligations, Plaintiff is seeking exemplary damages in the amount of $2,000,000.00.

81. Plaintiff requests a *Hodges* review of any punitive damage awarded and the fact finder be instructed to consider Defendants': (a) financial affairs, financial condition, and net worth; (b) nature and impact of conduct on the Plaintiff; (c) awareness of the amount of harm being caused; (d) duration of the conduct; (e) expense borne in an attempt to recover the losses; f) profit

obtained in order to deter similar future behavior; and (g) known or attempted remedial action for actual harm caused.

## XII. JURY DEMAND

82. Plaintiff respectfully demands a trial by jury.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants Thirsty Enterprises, LLC.; GPM Petroleum, LLC.; Shell USA, Inc.; Andre D. Scott; and, Johns/Janes Doe 1-10, as identified herein; that Plaintiff be awarded pre- and post-judgment interest at the maximum rate allowed by law; that Plaintiff be awarded costs of court, expenses, and attorneys' fees; and that Plaintiff be granted all other legal and equitable relief to which she may be entitled.

Respectfully submitted,

Harold F. Cook, TN Bar No. 025965
Whitney M. Cossio, TN Bar No. 042865
Jonathan R. Prazak, TN Bar No. 041721
**COOK & COSSIO**
620 W. 3rd Street, Suite 404
Little Rock, AR 72227
Phone: (501) 255-1500
Fax: (501) 255-1116

*Attorneys for Plaintiff*

# EXHIBIT 2

WSHB

1230 Peachtree Street NE • Suite 2350 • Atlanta, GA • 30309
tel 470.552.1150 • fax 470.552.1151 • www.wshblaw.com

P. Jeffery Rowe
direct dial 470.552.1173
email prowe@wshblaw.com
refer to 06131-0151

June 8, 2026

***VIA ELECTRONIC MAIL***
***AND FEDEX OVERNIGHT***

Law Offices of Libby and Nahmias
Adam M. Nahmias, Esq.
5384 Poplar Ave., Suite 410
Memphis, Tennessee 38119
adam@lnlawmemphis.com

| | | |
|---|---|---|
| **RE:** | **INSURED:** | **THIRSTY ENTERPRISES, INC. DBA: SHELL ON RANGE LINE** |
| | **POLICY NO.:** | CP 1792528B |
| | **POLICY PERIOD:** | August 6, 2024 through August 6, 2025 |
| | **DATE OF LOSS:** | May 18, 2025 |
| | **CLAIM NO.:** | 0-55986 |
| | **WSHB FILE NO.:** | 06131.0151 |

Dear Adam:

As you know, we represent United States Liability Insurance Company ("USLIC") which issued Commercial General Liability Policy No. CP 1792528B to Thirsty Enterprises, Inc. DBA: Shell On Range Line (the "Insured") for the policy period August 6, 2024 through August 6, 2025 (the "Policy").[1] Specifically, USLIC is in receipt of a lawsuit filed by Deloris Thomas, as administrator of the estate of Keyshun D. Thomas, deceased, arising out of a shooting incident and alleged wrongful death of Keyshun Thomas ("Thomas") at a Shell gas station on Range Line Road in Memphis, Tennessee (the "Property").[2] USLIC received notice of the lawsuit on February 23, 2026.

The purpose of this letter is to supplement USLIC's correspondence, including the July 23, 2025 coverage position letter.[3] Based on USLIC's ongoing investigation of the facts and circumstances as USLIC understands them to be, USLIC must inform you that neither the claim nor the allegations in the lawsuit trigger coverage under the Policy, including USLIC's duty to provide a defense in this case. In short, because neither the

---

[1] A true and correct copy of the Policy is re-attached here for your convenience.

[2] The Lawsuit is styled *Deloris Thomas, as Administrator of the Estate of Keyshun D. Thomas, Deceased v. Thirsty Enterprises, LLC; d/b/a Thirsty Shell GPM Petroleum, LLC; Shell USA, Inc.; John/Jane Does 1-10 and Andre D. Scott* (the "Lawsuit").

[3] A true and correct copy of USLIC's July 23, 2025 coverage position letter is re-attached here for your convenience.

claim nor the lawsuit triggers coverage under the Policy, USLI will not be appointing defense counsel at this time. USLIC provides a factual background and explains the basis for its decision below.

## I. BACKGROUND FACTS

### A. The Insured and Subject Property

We understand that Thirsty Enterprises Inc. DBA: Shell On Range Line is a Tennessee limited liability company with its principal office located in Memphis, Tennessee which owns the subject property, located at 2711 Range Line Road in Memphis, Tennessee (the "Property"). The Property is operated as a convenience store / liquor store connected to a Shell gas station and is the named insured property on the Policy.

### B. The Incident and Lawsuit

On or about May 18, 2025, at around 12:00 am, Keyshun Thomas ("Thomas") was at the Property. According to the allegations pled in the Complaint, Andre Scott subsequently entered the store with two accomplices and attempted to rob several patrons within. Thomas, seeing the robbery, attempted to flee. Scott then opened fire on several persons in the store and struck Thomas before fleeing. Thomas eventually passed away at the hospital as a result of his injuries. Scott has been charged with First Degree Murder in the perpetration of armed robbery and is currently in the custody of the Shelby County Sherriff's Office.

On February 3, 2026, Deloris Thomas, as the administrator of Thomas' estate, filed suit in Shelby County, Tennessee (the "Lawsuit"). The Lawsuit alleges negligence in failing to keep the premises safe and in failing to employ or enforce necessary security measures as well as failure to render aid. Thomas' estate alleges that the Insured's failure to render aid was a cause in fact to Thomas' death. Thomas' estate seeks damages for past medical expenses, past physical and mental pain and suffering, loss of enjoyment of life, full pecuniary value of life, pre and post-judgement interest, as well as statutory and discretionary cost of this cause of action.

## II. POLICY DETAILS

USLIC issued Policy No. CP1792528B to Thirsty Enterprises Inc. DBA: Shell On Range Line, which was issued for the period August 6, 2024 through August 6, 2025 (the "Policy"). The Policy provides certain commercial general liability ("CGL") coverage and liquor liability coverage, subject to its terms, conditions, and exclusions. The Policy's limits are: $1,000,000 per occurrence. The Property at issue is the scheduled location on the Policy.

## III. USLIC MUST DENY COVERAGE BECAUSE THERE IS NO BODILY INJURY CAUSED BY AN OCCURRENCE TRIGGERING COVERAGE UNDER THE POLICY

For your convenience, we set forth certain pertinent Policy provisions that may apply to the claim and the lawsuit.

**A. The Policy Provides No Coverage As Neither the Claim Nor the Lawsuit Allege Bodily Injury Caused By An Occurrence**

As an initial matter, the Policy's CGL form provides coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Policy, Form CG 00 01 12 07, p. 1 of 16. To trigger the Policy's insuring agreement, the "bodily injury" or "property damage" must be caused by an "occurrence" during the Policy period. *Id.* "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *Id.*, p. 13 of 16. The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 14.

Because the allegations as levied in the Complaint do not arise out of an accident or rise to the level of an "occurrence," USLIC must deny coverage as neither the claim nor the lawsuit triggers the Policy's insuring agreement.

**B. The Policy's CGL Form Excludes Coverage for Assault and Battery**

Next, the Policy's CGL form contains an express exclusion barring coverage for any claims arising out of an assault or battery. This exclusion states the following in relevant part:

> This insurance does not apply to "bodily injury" or "property damage," in whole or in part, either directly or indirectly, or in any way arising out of an actual, threatened or alleged assault or battery.
>
> For purposes of this exclusion, Assault and Battery includes, but is not limited to, the use of reasonable force to protect persons or property involving any insured, patron, or other person.

Policy, L 461 (11-20), p. 1 of 2.

As discussed above, the Complaint seeks to impose liability against the Insured for Mr. Thomas' wrongful death, which was alleged to be caused by Andre Scott's attack against him. Thus, the Plaintiff's claims fall squarely within the Policy's Assault and Battery exclusion. USLIC must therefore deny coverage on the basis that the several allegations of assault as levied in the Complaint trigger the Policy's Assault and Battery exclusion for which coverage does not apply.

**C. The Policy's CGL Form Excludes Coverage for Firearms Use**

The Policy's CGL form further provides an express exclusion barring coverage for claims arising out of firearms use. This Policy's exclusion provides in relevant part:

> This insurance does not apply to:
>
> 1. Bodily injury (including emotional distress and mental anguish);

2. property damage;

3. personal and advertising injury; or

4. medical payment;

directly or indirectly, in whole or in part, arising out of, resulting from, related to, or in any way involving the use or existence of a "firearm" of any kind.

This exclusion applies regardless of whether the use or existence of a "firearm" is an indirect cause, a direct cause, a contributing cause, a concurrent cause, an intervening cause or a superseding cause of any "bodily injury", "property damage", "personal and advertising injury" or medical payments. This exclusion applies regardless of the sequence of any such injury, damage or expense.

Policy, L 428 (11-20).

Additionally, the Policy's CGL form contains an Absolute Exclusion for Liquor and Other Related Liability, which states as follows:

This exclusion applies to all injury sustained by any person, including mental anguish or emotional distress, whether alleged, threatened or actual including but not limited to your negligence or other wrongdoing with respect to:

**(1)** Hiring, placement, employment, training, supervision, control or retention of a person for whom any insured is or ever was legally responsible; or

**(2)** Investigation or reporting to the proper authorities, or failure to so report; or

**(3)** The failure to protect any person while that person was in the insured's care, custody or control, including but not limited to providing or failing to provide transportation with respect to any person that may be under the influence of alcohol.

Policy, L 686 (04-15).

As quoted above, the Policy does not provide coverage for bodily injuries arising out of or related to firearms use. The Lawsuit attempts to impose liability against the Insured, along with Andre Scott and others, for Mr. Thomas' wrongful death in a shooting, allegedly caused by Mr. Scott's use of a firearm. The claim arises directly or indirectly from the use of a firearm. Since the alleged bodily injury was caused by excluded cause of loss, USLIC must also deny coverage under the above-referenced Policy language.

**D. The Policy's Liquor Liability Coverage Form Applies**

Further, we direct your attention to the entirety of form L-686 (04-15) ABSOLUTE EXCLUSION FOR LIQUOR AND OTHER RELATED LIABILITY that modifies insurance provided under the Commercial General Liability Coverage form and states:

**ABSOLUTE EXCLUSION FOR LIQUOR AND OTHER RELATED LIABILITY**

**SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, c. Liquor Liability** is deleted in its entirety and replaced by the following:

***

**c. Liquor Liability**

Loss or expense, including but not limited to the cost of defense, arising from or resulting, directly or indirectly, from:

**(1)** The causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age;

**(3)** The furnishing of alcoholic beverages to a person who is under the influence of alcohol;

**(4)** Violation of any statute, ordinance or regulation relating to the sale, gift, distribution, furnishing or use of alcoholic beverages; or

**(5)** The failure of any insured to prevent "bodily injury", "property damage" or "personal and advertising injury" to any person, including but not limited to an alleged intoxicated person, caused or alleged to be caused by the intoxication of any person(s) whether or not concurrent with other actual or alleged causes or whether or not any insured(s) furnished or served alcoholic beverage to such intoxicated person(s).

This exclusion applies to all injury sustained by any person, including mental anguish or emotional distress, whether alleged, threatened or actual including but not limited to your negligence or other wrongdoing with respect to:

**(1)** Hiring, placement, employment, training, supervision, control or retention of a person for whom any insured is or ever was legally responsible; or

**(2)** Investigation or reporting to the proper authorities, or failure to so report; or

**(3)** The failure to protect any person while that person was in the

> insured's care, custody or control, including but not limited to providing or failing to provide transportation with respect to any person that may be under the influence of alcohol.

Policy, L 686 (04-15).

At this time, neither the claim nor the Lawsuit alleges injuries arising out of the sale, service, or furnishing of alcohol or liquor. Consequently, there is no coverage under the Policy's Liquor Liability Coverage form.

**E. The Policy's Liquor Liability Form Excludes Coverage for Bodily Injury Arising Out of Firearms Use**

Like the Policy's CGL Coverage form, the Policy's Liquor Liability Coverage form precludes coverage for incidents arising out of the use of a firearm. The Policy states:

> **ABSOLUTE FIREARMS EXCLUSION**
>
> This insurance does not apply to "injury", including cost of defense, for any claim or "suit" arising or resulting from directly, or indirectly, the use of firearms of any kind.
>
> This exclusion applies to any "injury", claim or "suit" regardless of whether the use of firearms is a direct cause, a contributing cause or a concurrent cause of any loss.
>
> All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

Policy, L 428 (10-16).

As outlined above, USLIC will not provide coverage for injuries which occur due to the use of a firearm. This claim and Lawsuit alleges wrongful death arising directly or indirectly from the use of a firearm. USLIC must therefore deny coverage for any claims arising out of the use of a firearm under this Policy provision accordingly.

**F. The Policy's Punitive or Exemplary Damages Exclusion Applies**

The Policy also contains a Punitive or Exemplary Damages Exclusion. The language explicitly states in relevant part that "this policy does not apply to punitive or exemplary damages." Policy, L 224 (12-17) p. 1 of 1. Ms. Thomas' allegations against the Insured in the Complaint seek to recover punitive or exemplary damages. As such, any allegations of punitive or exemplary damages are expressly excluded under the Policy, and USLIC must deny coverage for the same.

**G. Other Policy Provisions**

Finally, USLIC writes to remind you of the other applicable Policy provisions that may apply here, including, but not limited to, the Insured's Duties in the Event of

Occurrence, Offense, Claim or Suit provisions cited to in USLIC's July 23, 2025 coverage position letter. We refer you the Policy language cite in USLIC's letter, which is re-attached here. We also remind you that the Policy provides:

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

Policy, CG 00 01 12 07, p. 11 of 16; CG 00 33 12 07, p. 4 of 6. The Policy defines "suit" as follows:

* * *

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Policy, CG 00 01 12 07, p. 15 of 16; CG 00 33 12 07, p. 5 of 6. Under this provision, the Insured must notify USLIC as soon as practicable of any additional lawsuits filed against it or any amendments to the Lawsuit.

## IV. <u>Conclusion</u>

For the reasons stated above, the Policy does not provide coverage for this matter, and USLIC therefore has no defense or indemnity obligations. This determination is based upon all information available at this time. Notwithstanding USLIC's decision to deny coverage under the Policy, USLIC continues to reserve all rights available to it under the Policy and applicable law. This includes, but is not limited to, the right to

investigate, deny coverage in part or whole, and/or seek a judicial determination in a declaratory judgment and/or rescission action. In addition, USLIC reserves the right to supplement or amend this letter upon the discovery of additional facts, subject to the Policy's terms, conditions, exclusions, and endorsements, including those not discussed in this letter.

If there is any additional information or documents you believe USLIC should consider as part of this matter, we ask that you provide this as soon as practicable.

Sincerely yours,

**WOOD, SMITH, HENNING & BERMAN, LLP**

P. Jeffery Rowe

PJR/DPR

Enclosures

WSHB

1230 Peachtree Street NE • Suite 2350 • Atlanta, GA • 30309
tel 470.552.1150 • fax 470.552.1151 • www.wshblaw.com

P. Jeffery Rowe
direct dial 470.552.1173
email prowe@wshblaw.com
refer to 06131-0151

July 13, 2026

***VIA ELECTRONIC MAIL***
***AND FEDEX OVERNIGHT***

Law Offices of Libby and Nahmias
Adam M. Nahmias, Esq.
5384 Poplar Ave., Suite 410
Memphis, Tennessee 38119
adam@lnlawmemphis.com

| | | |
|---|---|---|
| **RE:** | **INSURED:** | **THIRSTY ENTERPRISES, INC. DBA: SHELL ON RANGE LINE** |
| | **POLICY NO.:** | CP 1792528B |
| | **POLICY PERIOD:** | August 6, 2024 through August 6, 2025 |
| | **DATE OF LOSS:** | May 18, 2025 |
| | **CLAIM NO.:** | 0-55986 |
| | **WSHB FILE NO.:** | 06131.0151 |

Dear Adam:

As you know, we represent United States Liability Insurance Company ("USLIC"), which issued Commercial General Liability Policy No. CP 1792528B to Thirsty Enterprises, Inc. DBA: Shell On Range Line (the "Insured") for the policy period August 6, 2024 through August 6, 2025 (the "Policy"). The purpose of this letter is to formally respond to your most recent June 18, 2026 letter seeking reconsideration of USLIC's coverage determination previously outlined in its June 8, 2026 correspondence. For the reasons set forth below, USLIC must reaffirm its coverage position as neither the claim nor the allegations in the lawsuit trigger coverage under the Policy, including USLIC's duty to provide a defense in this case.

USLIC acknowledges your belief that the incident does not fall solely under the Policy's Absolute Assault or Battery Exclusion or under the Absolute Firearms Exclusions but rather under a category of post-assault negligence which would bring the allegations as pled within coverage. We also acknowledge your reliance on a line of Tennessee cases in support of your opinion as to why the Policy does not exclude coverage for this matter. However, the Policy's applicable exclusions as to assault and battery and firearms use are distinguishable because they are broader than the policy language relied on in the case law cited in your letter.

## I. The Policy's Absolute Assault or Battery Exclusion Applies

As an initial matter, the Policy contains an Absolute Assault or Battery Exclusion under the commercial liability coverage form that states in its entirety as follows:

**ABSOLUTE ASSUALT OR BATTERY EXCLUSION**

I. This insurance does not apply to:

1. "bodily injury" (including emotional distress and mental anguish);
2. "property damage";
3. "personal and advertising injury"; or
4. medical payment;

directly or indirectly, in whole or in part:

1. arising out of;
2. resulting from;
3. related to; or
4. in any way involving;

an actual, threatened or alleged (whether or not denied) "assault" or "battery". This includes any act or omission in connection with the prevention or suppression of any "assault" or "battery". This also includes but is not limited to the use of reasonable force to protect persons or property involving any insured, patron, or other person.

II. In furtherance to Item I. above, this insurance also does not apply to:

1. Allegations that do not use the terms "assault" or "battery", but the circumstances indicated the existence of conduct or actions that surround an "assault" or "battery".
2. Allegations of negligence or other wrongdoing with respect to:
   a. hiring, placement, employment, training, supervision or retention of a person for whom any insured is or ever was legally responsible; or
   b. the investigation, reporting or failure to report any "assault" or "battery"; or
   c. the failure to protect any person; or
   d. "bodily injury" (including emotional distress and mental anguish), "property damage"; or "personal and advertising injury" after the "assault" or "battery", if it directly or indirectly, in whole or in part:
      1. arises from;
      2. results from;
      3. relates to; or
      4. in any way involves;

the "assault" or "battery".

This exclusion supersedes any provision in the policy that could provide coverage.

"Assault" means the threat of, or use of force against another that causes that person to have apprehension of imminent harmful or offensive conduct, whether or not the threat or use of force is alleged to be:

1. negligent;
2. intentional; or
3. criminal;

in nature.

"Battery" means intentional or unintentional physical contact with another whether or not there was consent.

All other terms and conditions of this policy are the same. This endorsement is a part of your policy. It takes effect on the effective date of your policy unless another effective date is shown.

Policy, L 461 (11-20), pp. 1-2 of 2.

There can be no dispute that the Complaint alleges assault and battery and subsequent events resulting from it, specifically an allegation of failure to render aid on the part of the Insured. While the allegation of failing to render aid is separate from the assault and battery allegation, it arises from the assault and battery or is "in any way involv(ed)" with the incident.

The Absolute Assault or Battery Exclusion cited above serves as an express exclusion barring coverage for any claims arising out of an assault or battery and it identifies the exclusion as "Absolute," defining the scope of the exclusion in "directly or indirectly" and "in any way involves" terms. The cited provisions also enumerate negligence-based theories captured and includes a superseding clause. Additionally, the Complaint's separate "failure to render aid" count, as described, still falls within the Absolute Assault or Battery Exclusion because the injuries alleged "in any way involve" the assault and battery, and the exclusions negate any concurrent or sequence-based coverage arguments. Since the Plaintiff's claims as pled in the Complaint seek to impose liability as a result of an assault and battery (and use of a firearm), the claims fall squarely within the Policy's Absolute Assault or Battery Exclusion.

For these reasons, USLIC must therefore reiterate its prior position of no coverage on the basis that the several allegations of assault in the Complaint trigger the Policy's Absolute Assault or Battery Exclusion for which coverage does not apply.

**II. The Policy's Absolute Firearms Exclusions Apply**

Additionally, the Policy further provides two absolute exclusions barring coverage for claims arising out of firearms use – one under the commercial liability coverage form, and the other under the liquor liability coverage form. We address each in turn below.

The first Absolute Firearms Exclusion is contained under the commercial liability coverage form that states in relevant part as follows:

**ABSOLUTE FIREARMS EXCLUSION**

This insurance does not apply to:

1. "bodily injury" (including emotional distress and mental anguish);
2. "property damage";
3. "personal and advertising injury"; or
4. medical payment;

directly or indirectly, in whole or in part, arising out of, resulting from, related to, or in any way involving the use or existence of a "firearm" of any kind.

This exclusion applies regardless of whether the use or existence of a "firearm" is an indirect cause, a direct cause, a contributing cause, a concurrent cause, an intervening cause or a superseding cause of any "bodily injury", "property damage", "personal and advertising injury" or medical payments. This exclusion applies regardless of the sequence of any such injury, damage or expense.

Policy, L 428 (11-20), p. 1 of 1.

Even more, the second Absolute Firearms Exclusion appears under the liquor liability coverage form and states in full, as follows:

**ABSOLUTE FIREARMS EXCLUSION**

This insurance does not apply to "injury", including cost of defense, for any claim or "suit" arising or resulting from directly, or indirectly, the use of firearms of any kind.

This exclusion applies to any "injury", claim or "suit" regardless of whether the use of firearms is a direct cause, a contributing cause or a concurrent cause of any loss.

All other terms and conditions of this policy remain unchanged. This endorsement is a part of your policy and takes effect on the effective date of your policy unless another effective date is shown.

Policy, LQ 428 (10-16), p. 1 of 1.

As quoted above, both Absolute Firearms Exclusions bar coverage for bodily injury, property damage, personal and advertising injury, or medical payments "directly or indirectly, in whole or in part, arising out of, resulting from, related to, or in any way involving" the use or existence of a firearm. Policy, L 428 (11-20); Policy, LQ 428 (10-16). The exclusions apply irrespective of whether the firearm's involvement is an indirect, direct, contributing, concurrent, intervening, or superseding cause, and regardless of the

available at this time. Notwithstanding USLIC's decision to deny coverage under the Policy, USLIC continues to reserve all rights available to it under the Policy and applicable law. This includes, but is not limited to, the right to investigate, deny coverage in part or whole, and/or seek a judicial determination in a declaratory judgment and/or rescission action. In addition, USLIC reserves the right to supplement or amend this letter upon the discovery of additional facts, subject to the Policy's terms, conditions, exclusions, and endorsements, including those not discussed in this letter.

If there is any additional information or documents you believe USLIC should consider as part of this matter, we ask that you provide this as soon as practicable.

Sincerely yours,

**WOOD, SMITH, HENNING & BERMAN, LLP**

P. Jeffery Rowe

PJR/DPR

# LAW OFFICES OF LIBBY & NAHMIAS

*Admitted in Tennessee, Mississippi and Arkansas

5384 Poplar Ave., Suite 410
Memphis, Tennessee 38119

Telephone: (901) 343-0777
Facsimile: (901) 343-0780

Attorneys & Mediators

Stephen F. Libby, Esq.*
Adam M. Nahmias, Esq.

steve@lnlawmemphis.com
adam@lnlawmemphis.com


August 4, 2026

Tennessee Commissioner of Insurance, Insurance Division
Attn: Service of Process
500 James Robertson Pkwy
Nashville, Tennessee 37243

Re: Thirsty Enterprises, LLC v. USLIC NAIC 25895
Shelby County Chancery Docket No. CH-26-1034 (Part II)

To Whom It May Concern:

Enclosed are a Summons and Complaint to be served on United States Liability Insurance Company (NAIC Code is 25895), along with a check in the amount of $15.00. Please contact me if you have any questions or need anything further. Thanks.

Sincerely,
**THE LAW OFFICES OF LIBBY & NAHMIAS**

Adam M. Nahmias

'26 SEP 4 9:19AM

TN Department of Commerce & Insurance
Service of Process
500 James Robertson Parkway
Nashville, TN 37243

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL®**

7020 1290 0001 6210 4203

PRIORITY MAIL

US POSTAGE PITNEY BOWES

ZIP 37243 $ 023.25⁰
02 7W
0008044159 AUG 21 2026

7020 1290 0001 6210 4203 August 2026

United States Liability Insurance Company
P O Box 6700
Wayne, PA 19087-8700